**BERRY PROPERTY MANAGEMENT, INC., Appellant,**

v.

**Juli BLISKEY, Appellee.**

**No. 13–91–658–CV.**

Court of Appeals of Texas, Corpus Christi.

Feb. 25, 1993.

Rehearing Overruled March 26, 1993.

---

1. 707 S.W.2d 23 (Tex.Crim.App.1985).

646

648

Richard W. Crews, Jr., Thomas F. Nye, Brin & Brin, Corpus Christi, Roger Townsend, Ben Taylor, Terriann Trostle, Joy M. Soloway, Fulbright & Jaworski, Houston, for appellant.

David M. Gunn, W. James Kronzer, Houston, William R. Edwards, Edwards & Terry, Corpus Christi, for appellee.

·Before SEERDEN, KENNEDY, and FEDERICO G. HINOJOSA, Jr., JJ.

## OPINION

SEERDEN, Justice.

This is a negligence and DTPA case in which a jury found Berry Property Management culpable under both theories, and the trial court entered judgment accordingly. Both parties appeal. We modify and affirm the trial court's judgment.

Juli Bliskey lived at Wilderock Townhomes in Corpus Christi. In the middle of an October night in 1987, an intruder, using a key to Bliskey's front door, entered her townhome while she was asleep, and sexually assaulted her. Bliskey testified at trial that after her attack, the intruder told her that since she had cooperated with him, he would tell her how it all happened. Bliskey explained that the intruder told her that he broke into the property management office of the Wilderock Townhomes. He looked through the resident files searching for single women with good jobs. He told Bliskey that he was able to match the files with the corresponding apartment keys. The intruder selected Bliskey's lease information because it showed she was a single woman and listed her as the sole

resident in townhome 2313B. He then matched the apartment number on the lease information with Bliskey's door key, which was clearly identified by her townhome number. He explained that he found her key hanging on a pegboard displaying all of the residents' keys in the property management office. The intruder was later apprehended, arrested, convicted for his crime, and incarcerated. While in prison he escaped, but, soon after, was apprehended and returned to jail.

Bliskey sued Wilderock Townhomes and Wilderock Owners, Inc., the owners of Bliskey's individual townhome, and Berry Property Management, Inc. for negligence and deceptive trade practices. Bliskey also sued various other Berry entities, and their owner, Annette Berry.[1] The judgment does not address these other various Berry entities and they are not involved in this appeal. Shortly after trial began, Wilderock and the owners of Bliskey's specific townhome settled for $60,000, were nonsuited, dismissed from the lawsuit, and also are not a subject of this appeal.

By her lawsuit, Bliskey alleged that Berry was negligent in handling its residents' keys and violated the DTPA by failing to provide door locks as required by statute and warranted by the lease. She alleged that these acts were causes of her sexual assault and other related injuries. The jury agreed with Bliskey. Both sides filed timely post-verdict motions and the trial court entered judgment on the verdict awarding Bliskey compensatory and punitive damages.

Following the trial court's overruling Berry's motion for new trial by operation of law, Berry brings nineteen points of error for our review. Berry's points of error complain about the jury size, the sufficiency of the evidence, the court's jury charge, the damages, the calculation of attorneys' fees, and the application of the settlement sum to the damages awarded. Bliskey brings two cross-points for our review complaining about the trial court's

**1.** Throughout our opinion, we refer to Berry Property Management as "Berry" and, when referring to Annette Berry individually, we use her full name.

method in calculating damages and attorneys' fees.

## Jury of Eleven

By point one, Berry complains about the trial court dismissing a juror on the second day of trial. A jury of twelve persons was impaneled and sworn. On the morning of the second day of trial, the bailiff reported to the trial court that juror Wilson told him that he saw one of the defendants talking with his "insurance man" and friend, Scott Oshman. The bailiff also reported to the court that Wilson told him that he did not want to see his friend Oshman get hurt if he was somehow involved in the case. During a bench discussion among the attorneys and the trial judge about the impact of this information on the proceedings and how to address this issue, Berry's attorney disclosed that it was Oshman who wrote the insurance policy for the defendant Berry. The court then brought Wilson into the courtroom and asked him to explain what he had seen and his concern about his friend Oshman. Wilson explained that he had seen Berry talking with Oshman, and that he was concerned about his, Oshman's, involvement in the case. He continued by telling the court that Oshman was a family friend and that Oshman had written his personal insurance policies. Wilson was concerned that if Oshman were involved in any way in the facts surrounding this case that the court should be aware of his relationship with Oshman. The trial court instructed Wilson not to consider any matters extraneous to the evidence he would hear in the courtroom and asked could he do that. Wilson answered "uh-huh." Bliskey then asked that Wilson be removed from the jury panel or, alternatively, for the trial court to declare a mistrial. Appellant's attorney stated that he opposed proceeding with the trial with only eleven jurors, and contended that regardless of the court's instructions to Wilson, he believed that insurance was improperly injected into the proceedings. The trial court recalled Wilson, and inquired further about whether Wilson had discussed his relationship with Oshman with any of the other jurors. Wilson told the trial court that he had not discussed what he had seen or his friend-ship with Oshman with any other jurors. After learning this, and reviewing juror Wilson's testimony, the court excused Wilson, denied the motion for mistrial, and resumed the trial with the remaining eleven jurors.

By point one, Berry contends that the trial court reversibly erred when it excused juror Wilson after trial testimony began. Berry contends that completing the trial with the remaining eleven jurors requires us to remand this case for a new trial. Berry propounds that proceeding with the trial with only eleven jurors was violative of Texas Constitution article 5, section 13, which provides:

> When pending the trial of any case, one or more jurors not exceeding three, may die, or be disabled from sitting, the remainder of the jury shall have the power to render the verdict; provided, that the Legislature may change or modify the rule authorizing less than the whole number of the jury to render the verdict.

Also instructive is Texas Rule of Civil Procedure 292, which in part provides:

> A verdict may be rendered in any cause by the concurrence, as to each and all answers made, of the same ten members of an original jury of twelve.... However, where as many as three jurors die or be disabled from sitting and there are only nine of the jurors remaining of an original jury of twelve, those remaining may render and return a verdict.

■ A disability sufficient to justify the dismissal of a juror is largely left to the trial court's discretion. *Southern Pac. Transp. Co. v. Peralez*, 546 S.W.2d 88, 97 (Tex.Civ.App.—Corpus Christi 1976, writ ref'd n.r.e.). Therefore, in determining whether the trial court abused its discretion, we determine whether the trial judge acted without reference to guiding rules and principles or whether his act excusing juror Wilson was arbitrary and unreasonable. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex.1985).

■ Illness, mental disability, misconduct, drunkenness or *other facts* are subject to the discretionary consideration of

the trial court in determining a juror's disability. *Remuda Oil & Gas Co. v. Nobles*, 613 S.W.2d 312, 314 (Tex.Civ.App.—Fort Worth 1981, no writ); *Daniels v. Southwestern Transp.*, 621 S.W.2d 188, 191 (Tex. Civ.App.—Texarkana 1981, no writ).

Additionally, a person is disqualified to serve as a juror if he has a bias or prejudice in favor of or against a party in the case. Tex.Gov't Code Ann. § 62.105(4) (Vernon 1988). If bias or prejudice is established, then the juror is disqualified by operation of law. *Swap Shop v. Fortune*, 365 S.W.2d 151, 154 (Tex.1963). Whether a juror is biased or prejudiced is a factual determination to be made by the trial court. *Id.* In order to disqualify a juror, it must appear that the juror's state of mind leads to the natural inference that the juror will not act with impartiality. *Compton v. Henrie*, 364 S.W.2d 179, 182 (Tex.1963). In this case, the trial court had the opportunity to observe the juror as he testified and was in a better position than we are now to evaluate the juror's sincerity and his capacity for fairness and impartiality. *See Fortune*, 365 S.W.2d at 154. Under these circumstances, we conclude that the trial court did not act unreasonably or without referring to guiding rules and principles when proceeding with the trial in the absence of the twelfth juror.

Also, we note that a verdict may be rendered in any cause by the concurrence, as to each and all answers made of the same ten members of an original jury of twelve. Tex.R.Civ.P. 292; *see Sherrill v. Estate of Plumley*, 514 S.W.2d 286, 296–97 (Tex.Civ.App.—Houston [1st Dist.] 1974, writ ref'd n.r.e.) (verdict of 10–2 with same 10 jurors concurring on all issues was constitutional). The jury, in the case before us, rendered a unanimous verdict. We contrast the facts in the case before us with those in *Palmer Well Servs. Inc. v. Mack Trucks, Inc.*, 776 S.W.2d 575 (Tex.1985). In *Palmer*, the jury rendered a 10–2 verdict. After the verdict, Palmer, by a motion for new trial, alleged discovery of a felony indictment pending against one of the ten jurors making up the majority, and asserted that the verdict was not rendered

by the requisite number of jurors. *Palmer*, 776 S.W.2d at 576. The *Palmer* court agreed, and held that harm was presumed because this was not an instance when a verdict could have been rendered by less than the same ten jurors as required by rule 292. *Id.* at 577; *see also Waggoner v. Sneed*, 53 Tex.Civ.App. 278, 118 S.W. 547, 548–49 (1909, writ dism'd w.o.j.) (*subject to* provisions for a verdict by less than legal number, right is to trial by legal number, and judgment entered on verdict of jury composed of less than legal number is reversible without any explicit showing of harm).

In the case before us, the verdict was rendered by the concurrence to all answers made of the same ten members of an original jury of twelve. The 11–0 verdict was within rule 292, which allows the rendition of a verdict by ten members of the original jury. *Beavers v. Northrop Worldwide Aircraft Servs. Inc.*, 821 S.W.2d 669, 681 (Tex.App.—Amarillo 1991, writ denied) (opinion on rehearing). Thus, the verdict was rendered by a sufficient number of qualified jurors, and no reversible error is shown. We conclude that the trial court was within his discretion in excusing juror Wilson. We overrule point one.

NEGLIGENCE

Initially we note that common law negligence consists of three elements 1) a legal duty owed by one person to another, 2) a breach of that duty, and 3) damages proximately resulting from the breach. *El Chico Corp. v. Poole*, 732 S.W.2d 306, 311 (Tex.1987).

By point two, Berry asserts that we should reverse and render that Bliskey take nothing on the negligence portion of the judgment because a property management company owes no duty to its residents to protect them from deliberate criminal acts of a third party. By point thirteen, appellant contends that the evidence is legally and factually insufficient to support the jury's finding that Berry's conduct proximately caused Bliskey's damages.

Duty of Reasonable Care

Duty is the threshold issue in a negligence cause of action. A plaintiff must prove the existence and violation of a duty owed to him by the defendant to establish liability in tort. *Poole*, 732 S.W.2d at 311. In determining whether Berry owed a duty to Bliskey, the court considers several interrelated factors including the risk, foreseeability, and likelihood of injury weighed against the social utility of the actor's conduct, the magnitude of the burden of guarding against the injury, and the consequences of placing the burden on the defendant. *Greater Houston Transp. Co. v. Phillips*, 801 S.W.2d 523, 525 (Tex.1990). Though the foremost and dominant factor in determining whether a duty exists is foreseeability of the risk, and the foreseeability of the harmful consequences resulting from the particular conduct, it remains only a factor, which although probative, is not dispositive. *Poole*, 732 S.W.2d at 311 (citing *Corbin v. Safeway Stores, Inc.*, 648 S.W.2d 292, 296 (Tex.1983)). Additionally, we note that the Supreme Court of Texas has repeatedly held that only the general danger need be foreseeable, not the exact sequence of events that produced the harm. *Lofton v. Texas Brine Corp.*, 777 S.W.2d 384, 387 (Tex.1989). Thus, before liability will be imposed, there must be sufficient evidence indicating that the defendant knew or should have known that harm or injury would eventually befall a victim. *Phillips*, 801 S.W.2d at 526. Absent such a showing, a defendant is absolved of liability. *Id.*

A policy at Wilderock was that management have a key to all of the tenants' exterior door locks. With this policy came a duty to maintain the tenants' keys with ordinary care. The evidence showed that keys to the tenants' residences were kept on a pegboard hung on the wall of the property management office. There was no special coding system for the keys, rather, they were identified by a resident's apartment number. Additionally, the evidence showed that although management considered purchasing a locking metal key box, priced at $30.00, for keeping the keys

secure, it opted for the pegboard method. The residents' leases and rental information were kept in an unlocked file cabinet next to the pegboard with the identified keys. Wilderock had no on-site security program and the property management office was without secondary locks on the windows and without any type of security device such as alarms or sensors.

Harry Caldwell, former Houston chief of police, testified that security provided for Bliskey's key, lease, and rental information at Wilderock was unconscionable. Caldwell opined that the fact that they hung her identified apartment key next to the unlocked cabinet containing her lease in an office without any security system at all was terrible. Caldwell concluded that it was the worst case he had seen in his eleven years of evaluating apartment security systems. Annette Berry, manager of the Wilderock Townhomes testified by deposition that, being in the apartment business, she was aware, prior to Bliskey's sexual assault, that "something like" her sexual assault happens to other people, while also acknowledging that it in fact does occur. Appellee's counsel asked her, "It is something that [to] you as an apartment manager, is foreseeable that somebody is going to have this happen to them." To this question Annette Berry responded, "true."

Given the facts of this case, we conclude that the risk someone might improperly gain access to the apartment keys in the property management office and match residents, learn their apartment numbers, and cause them harm was foreseeable. Storing the clearly identified keys on a pegboard next to lease information in an unlocked file cabinet in an office without any type of security provisions resulted in an unreasonable risk that an individual, upon entering the management office, could easily learn about a resident, and obtain keys to that resident's apartment as the criminal did before sexually assaulting Bliskey.

Berry argues that Bliskey's intruder's breaking into the property management office was a superseding cause of her sexual

assault. We focused our initial duty analysis on the underlying issue which was the duty Berry owed to Bliskey to maintain her keys and rental information in a safe manner.

We cannot say as a matter of law that Berry owed no duty to Bliskey regarding the safekeeping of her keys and rental information. We conclude that the danger that someone could enter the management office and access resident rental information and the respective keys, whether properly or improperly, was foreseeable and management owes its residents a duty of ordinary reasonable care in maintaining its residents' keys and rental information. In light of a management policy requiring keys to all resident exterior door locks, comes a duty to exercise reasonable care in handling those keys. We conclude that Berry was required to maintain its residents' keys in a safe manner.

We continue our negligence analysis and determine whether Berry's mishandling of Bliskey's key was a proximate cause of her sexual assault.

Causation

In order to prevail on her negligence cause of action, Bliskey must establish that Berry's negligent conduct proximately caused her injuries. *Poole*, 732 S.W.2d at 313. There may be more than one proximate cause of an event. *Strakos v. Gehring*, 360 S.W.2d 787, 789 (Tex.1962). Proximate cause consists of cause in fact and foreseeability, both of which must be proven by legally and factually sufficient evidence. *City of Gladewater v. Pike*, 727 S.W.2d 514, 517 (Tex.1987); *Poole*, 732 S.W.2d at 313. Cause in fact is "but for cause," meaning the negligent act or omission was a substantial factor in bringing about the injury and without which no harm would have been incurred. *Id.* (citing *Nixon*, 690 S.W.2d at 549); *see also Benser v. Johnson*, 763 S.W.2d 793, 795 (Tex. App.—Dallas 1988, writ denied). Bliskey must prove it was more probable than not that, but for Berry's conduct, she would not have been harmed. *Id.* (citing *Farley v. M M Cattle Co.*, 529 S.W.2d 751, 755–56 (Tex.1975)). Bliskey need not exclude all possibilities of harm, but instead must only prove that the greater probability is that Berry's conduct was a cause of the sexual assault. *Id.*

Foreseeability, the second element of proximate cause, means the actor, in this case Berry, as a person of ordinary intelligence should have anticipated the dangers its negligent act creates for others. *Id.* (citing *Nixon*, 690 S.W.2d at 550). Foreseeability does not require that the actor anticipate the precise manner in which injury will occur once he has created a dangerous situation through his negligence, rather, only that he reasonably anticipate the general character of the injury created by his negligent act even though he is not required to anticipate exactly how injuries might arise. *Id.*

Berry contends that at most its negligence in handling the lease information and the keys merely furnished the condition that made the sexual assault possible. Thus, Berry asserts that it cannot be liable for negligence because its negligence is at most a remote cause which cannot be made the basis of a cause of action for damages. Berry asserts that this is because its acts did nothing more than furnish the condition or give rise to the occasion which made the injury possible, and the injury was the result of some other cause which reasonable minds would not have anticipated, even though the injury would not have occurred but for such condition. *Phoenix Ref'g Co. v. Tips*, 81 S.W.2d 60, 61 (Tex.1935).

All persons who contribute to an injury are liable; the negligence of one does not excuse the negligence of another. *Poole*, 732 S.W.2d at 313 (citing *Strakos v. Gehring*, 360 S.W.2d 787, 794 (Tex.1962)). However, there are situations when the happenstance of place and time is too attenuated from the defendant's conduct for liability to be imposed. *Lear Siegler, Inc. v. Perez*, 819 S.W.2d 470, 472 (Tex.1991). Courts have held that one of these instances is that a third party's criminal conduct will be a superseding cause that relieves the negligent defendant from liability *unless* the criminal conduct is a foreseeable result of such negligence. *Benser*, 763

S.W.2d at 795 (citing *Nixon,* 690 S.W.2d at 550). The Restatement (Second) of Torts § 448 (1965) states:

> The act of a third party in committing an intentional tort or crime is a superseding cause of harm to another resulting therefrom, although the actor's negligent conduct created a situation which afforded an opportunity to the third person to commit such a tort or crime, unless the actor at the time of his negligent conduct realized or should have realized the likelihood that such a situation might be created, and that a third person might avail himself of the opportunity to commit such a tort or crime.

By point two, Berry contends that this concept applies to the case before us. Berry posits that the criminal conduct of the intruder was not foreseeable and consequently, as a matter of law, Berry cannot be liable for Bliskey's injuries. Berry asserts that to raise a fact issue about foreseeability of criminal activity, there must be evidence of specific crimes on or near Wilderock. Berry contends that the evidence failed to show any essential evidence of similar violent crimes occurring on or near the premises and therefore Berry did not proximately cause Bliskey injury. Bliskey argues that while the frequency of crime in the area is probative, it is not dispositive of whether criminal activity is foreseeable. Frequency of crime is only a factor.

By point thirteen, Berry challenges the sufficiency of the evidence to support the jury's finding that Berry's negligence was a proximate cause of Bliskey's injuries. Texas courts routinely hold that proximate causation is a fact question within the jury's province. *See Ramey v. Collagen Corp.,* 821 S.W.2d 208, 212 (Tex.App.— Houston [14th Dist.] 1991, writ denied). It is for the jury to weigh the probability of harm to the plaintiff and the gravity of that harm against the cost or burden imposed by the required precaution. *Benser,* 763 S.W.2d at 797.

■■■■■ In reviewing the evidence when an attack on the legal sufficiency of the evidence or a "no evidence" point is raised, we must consider only the evidence and inferences tending to support the jury's finding, viewed most favorably to the finding, and disregard all contrary evidence and inferences. *Best v. Ryan Auto Group, Inc.,* 786 S.W.2d 670, 671 (Tex. 1990). If there is any evidence of probative force to support the finding, the "no evidence" point must be overruled and the finding upheld. *Southern States Transp., Inc. v. Texas,* 774 S.W.2d 639, 649 (Tex. 1989).

■■■■■ In reviewing the evidence when an attack on the factual sufficiency of the evidence or an "insufficient evidence" point is raised, we must consider and weigh all of the evidence in the case. *Lofton v. Texas Brine Corp.,* 720 S.W.2d 804, 805 (Tex. 1986). In this case, appellant is attacking the sufficiency of the evidence supporting a jury finding on an issue which he did not have the burden of proof, thus, he must demonstrate that there is factually insufficient evidence to support the affirmative finding. *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986). We may set aside the verdict only if the evidence is so weak as to be clearly wrong and manifestly unjust. *Id.*

■■■■■ The evidence at trial showed Maxine Smith began working for Berry as manager of Wilderock during the end of 1986, and was the manager of the complex when Bliskey was sexually assaulted in October 1987. She had worked for other property management companies since 1978. Smith testified that she was concerned about security at Wilderock. She obtained several estimates from CP & L for improved lighting around the property. Smith explained that she did not want to walk around Wilderock outside after dark because she was concerned about her safety due to the poor lighting. Additionally, Smith explained that she was concerned about the residents' keys being displayed on a pegboard in the office. She testified that she had never worked at a property that did not have either a coding system for the keys or a separate lock box for residents' apartment keys. Before Bliskey's sexual assault occurred, Smith was concerned about the keys and had her son check prices on

the locking-type metal box for keys. She then suggested to the management company that it should purchase a $30.00 locking-type metal key box. She never received the key box. Smith further explained that the leases were kept in unlocked file cabinet drawers.

Charles Baird testified at trial that he did contract maintenance work at Wilderock while Maxine Smith was manager and Berry was the property management company. He testified that Smith asked him to check on the price of a locking key box which he did. He explained that the key box was never purchased because when Smith told Annette Berry the price, Berry said no to the purchase.

Annette Berry testified at trial. She explained that after she took over management of the townhomes some changes were made in the outdoor lighting for security reasons. She explained that one of the reasons additions were made in lighting was to prevent things like what happened to Bliskey. Additionally, she explained that there was a discussion about on-premises security. She explained that it was a way to offer people the safest living conditions you can. Also she was asked if things like Bliskey's sexual assault happen. We excerpt the following from the trial testimony:

Q: [referring to Annette Berry's deposition] And the question was: "Well, you are in the apartment business, and you know that things like this do happen, right?" Your answer was: "Only to other people. Question: But you know they do happen. Answer: Yes. Question: And you knew that before Juli Bliskey's attack. Answer: Exactly." [Question:] "It is something that to you as an apartment manager, is foreseeable that somebody is going to have this happen to them. Answer: True." That exchange did take place between you and me when your deposition was taken; is that correct?

A: Yes.

Q: And it was foreseeable that something like this could occur, right?

A: Something could occur.

Q: And the "something" that we were talking about at that time was Juli Bliskey's [sexual assault]. "Something like this," meant something like Juli Bliskey's [sexual assault], correct?

A: Yes.

Q: And that was foreseeable to you, right?

A: No.

Q: Whatever it says here is correct?

A: Yes.

We conclude from our review of the evidence presented, that Berry considered security measures for the property. These measures included lighting for the property and a lock box for its residents' keys. These measures were considered because it was foreseeable that crime could occur on the premises. There exists evidence in the record from which a jury could conclude that harm could eventually befall Bliskey. The breaking into the management office was not the sole cause of Bliskey's sexual assault; additionally, it was the intruder's ability to match Bliskey's rental information to her key which allowed him to gain access to her townhome. Without matching Bliskey's rental information to her key, her sexual assault probably would not have occurred. We conclude that the jury could find from the evidence presented that Berry's negligent act of handling its residents' keys was a proximate cause of Bliskey's sexual assault. The mishandling of the keys allowed Bliskey's attacker to match her key to her apartment.

Thus, the evidence showed Berry realized or should have realized the likelihood that a situation might be created, and that a third person might avail himself of the opportunity to commit a tort or crime. *See Benser,* 763 S.W.2d at 795; Restatement (Second) of Torts § 448 (1965). Here, the jury found that Berry's negligent mishandling of keys was a proximate cause of Bliskey's sexual assault. We will not disturb their finding. We overrule points two and thirteen.

DTPA

Sufficiency of Evidence

By point fourteen, appellant contends that the jury's answers to questions seven

658

and eight are supported by legally and factually insufficient evidence.

Question seven asked the jury to determine whether Bliskey asked any Berry employee for a locking device for her door which was required by statute to be provided when requested. The question was accompanied by the following instruction,

You are instructed that [the] statute requires the installation of a "night latch" when requested. "NIGHT LATCH" means a door chain latch or a door lock, with the lock operated without a key and only from the interior by chain, knob or lever.

The jury answered, "yes."

Question eight asked the jury to determine if the failure of Berry, acting through any of its employees, to allow the installation of such locking device was a producing cause of damages to Bliskey. The jury answered, "yes."

Paragraph eleven of Bliskey's lease provides that "Owner will furnish ... locks and latches as required by statute." The Texas Property Code provides that the landlord shall install, change, or rekey a security device according to this subchapter after the landlord receives a request from the tenant of a dwelling. Tex.Prop. Code Ann. § 92.153(a) (Vernon 1984). The landlord's obligation is limited to installing among other things: one deadbolt lock and one night latch on each exterior door other than a sliding glass door, screen door, or garage door. Id. at § 92.153(b)(3). Bliskey's lease is signed "Resident, Juli Bliskey" and "Owner or Owner's Representative, Carol Parker."

Berry asserts that it committed no DTPA violations because it neither made nor breached any warranty. Berry contends that the statutory requirement to provide locks is placed upon a "landlord" which it is not. "Landlord," as defined in the Texas Property Code, means the owner, lessor, or sublessor of a dwelling, but does not include a manager or agent of the landlord unless the manager or agent purports to be the owner, lessor, or sublessor in an oral or written lease. Tex.Prop.Code Ann. § 92.-001(2) (Vernon 1984). Berry contends that

it is not liable because it is not an owner or a landlord.

Berry in effect contends that it was not required to conform to the statute. Rather, Berry asserts that Wilderock, the actual owner, was the only party required to conform to the statute. We disagree.

During the evidence presented at trial, Berry testified that a resident's request to change or add a lock would be handled by Berry and not by the actual owner. Berry would act on behalf of the owner in carrying out any duties required under the law of a landlord. While the language of the lease refers to the owner and the statute refers to a landlord, we conclude that in this case Berry was acting as an agent for the owner and may be liable for improperly handling Bliskey's request for a night latch.

The DTPA does not require privity. The legislature has not indicated that the DTPA is to be restricted in its application only to deceptive trade practices committed by persons who furnish the goods and services upon which the complaint is based. *Cameron v. Terrell & Garrett, Inc.,* 618 S.W.2d 535, 541 (Tex.1981). Nor is there any indication that the legislature intended to restrict its application by any other similar privity requirement. *Id.*

In this case, Berry's employee signed the lease agreement and was the party who told Bliskey that it could not install a door lock without a key. The lease instructed Bliskey to direct all issues regarding her apartment to Berry. We conclude that questions seven and eight were material and supported by the evidence. We overrule point fourteen.

By point fifteen, Berry contends that legally and factually insufficient evidence supports the jury's answers to questions five and six.

The jury, by its answer to question six, found that Berry engaged in a false, misleading or deceptive act or practice which was a producing cause of Bliskey's damages. Question six included an instruction addressing the phrase "false, mislead-

ing or deceptive act or practice." The question included the following instruction about the term,

1. Representing that services had or would have characteristics which they did not have; or

2. Representing that an agreement confers or involves rights, remedies or obligations which it does not have, or involve, or which are prohibited by law.

Berry asserts that upon review we will find legally and factually insufficient evidence that anyone associated with Berry represented anything to Bliskey about any "services" or the provisions of any "agreement."

In reviewing the evidence at trial, we note Bliskey's testimony. Bliskey testified that when she moved into her apartment the front door to her apartment had only a deadbolt lock, keyed from the outside, and she did not feel quite safe enough with only one door lock. Bliskey explained that she asked Carol Parker about having a type of deadbolt placed on her door "where I could just lock myself in when I was at home by myself, and for nighttime, where I would be locked in." Bliskey wanted some kind of keyless lock to keep people out while she was at home. When Bliskey explained the type of lock she wanted, Parker told her that the only other kind of locking device that could be added to her front door would be a device that had a keyed outside, because management was required to have a key to any lock that was placed on her front door. Bliskey explained that Parker did not offer any other type of lock, chain, or sliding bolt. Bliskey explained that Parker only told her that she had to have a key to whatever type of lock was put on the door.

Annette Berry testified that under the lease, she owed Bliskey a deadbolt lock and a nightlatch. Additionally, she explained that a keyless night latch with a deadbolt would be allowable just as an inside chain lock would be allowable and would not require a key to management.

Carol Parker, the current manager of Wilderock Townhomes, testified that she was the assistant manager at the time of Bliskey's sexual assault. Parker testified that she did not recall, one way or another, any conversation in which Bliskey asked about adding a lock to her front door. She explained that when residents asked to have additional locks placed on their doors, her company had always added them if the resident paid for the lock. She recalled times when night chains with slip-bolt locks were placed on doors. She also testified that she had no problem adding an additional deadbolt lock so long as she had a key. She also explained that it was customary that a resident's oral request was sufficient for a service request and that they did not require a resident to make a written request for any type of service.

Maxine Smith, manager of Wilderock at the time of Bliskey's sexual assault, testified by deposition that she did not recall Bliskey making a request to her for additional locks on her front door.

In reviewing all of the evidence, both favorable and unfavorable to the jury's findings, we conclude that there is legally and factually sufficient evidence supporting the verdict. Particularly, we note the evidence that Bliskey's lease, represented the statutory obligation that if Bliskey requested a night latch one would be provided. Subsequently, when Bliskey requested a type of lock whereby she could lock herself in at night, Berry represented to her that they must have a key to any additional lock placed on Bliskey's front door. We conclude that the jury, based on evidence before them, could find that Berry engaged in a false, misleading or deceptive act based upon the definition given them.

The jury, by its answer to question five, found that Berry engaged in an unconscionable action or course of action that was a producing cause of Bliskey's damage. Accompanying question five was the following instruction,

An "UNCONSCIONABLE ACTION OR COURSE OF ACTION" is an act or practice that, to a person's detriment, either—

(a) Takes advantage of the lack of knowledge, ability, experience, or capaci-

ty of a person to a grossly unfair degree, or

(b) Results in a gross disparity between value received and consideration paid in a transaction involving transfer of consideration.

This instruction is consistent with the statutory definition of "unconscionable action or course of action." *See* Tex.Bus. & Com. Code Ann. § 17.45(5) (Vernon 1987). Berry contends that there is no evidence that its acts or actions were unconscionable.

Under the facts of this case, Bliskey failed to show any gross disparity between value received and consideration paid in a transaction involving transfer of consideration. Therefore, the only other way in which Bliskey can recover under the DTPA is to show that Berry took advantage of Bliskey's lack of knowledge, ability, or capacity to a grossly unfair degree. *Chastain v. Koonce*, 700 S.W.2d 579, 582 (Tex. 1985).

■■■■■■ Section 17.45(5) of the Texas Business and Commerce Code does not expressly require a consumer to prove the mental attitude of the defendant in order to recover actual damages. *Chastain*, 700 S.W.2d at 583. This section is intended to be an objective standard. *Id.* By this analysis, under section 17.45(5)(A), a consumer need only prove that he was taken advantage of to a grossly unfair degree. *Id.* This should be determined by examining the entire transaction and not by solely inquiring whether the defendant intended to take advantage of the consumer or acted with knowledge or conscious indifference. *Id.* The term "gross" should be given its ordinary meaning of glaringly noticeable, flagrant, complete, and unmitigated. *Id.* (citing Webster's Third International Dictionary 1002 (1976)). A consumer's proof of gross unfairness does not require proof that the defendant acted intentionally or knowingly to bring about the result. *Id.* Taking advantage of a consumer's lack of knowledge to a grossly unfair degree thus requires a showing that the resulting unfairness was glaringly noticeable, flagrant, complete, and unmitigated. *Id.* at 584.

■■■■■ We conclude that the evidence is sufficient to support the jury's finding that Berry's acts were unconscionable. Annette Berry testified that she knew that Bliskey was entitled under the law and the lease to a deadbolt and a night-latch-type of door lock. However, when Bliskey asked about having a type of door lock installed whereby she could lock herself into her home, Berry's employee told her she could not have an additional lock put on her door without giving a key to the management. We conclude that a jury could find from the evidence presented that Berry engaged in an unconscionable act or course of action. We overrule point fifteen.

■■■■■ By point six, Berry contends that the evidence is legally and factually insufficient to support the jury's answer to question twelve. By its answer to question twelve, the jury found that Berry "knowingly" engaged in the deceptive conduct. The trial court defined knowingly as follows:

"KNOWINGLY" means actual awareness of the falsity, deception or unfairness of the conduct in question or actual awareness of the conduct constituting a failure to comply with a warranty. Actual awareness may be inferred where objective manifestations indicate that a person acted with actual awareness.

This definition substantially complied with Texas Business and Commerce Code Section 17.45(9). Thus, based upon this definition, knowing conduct may be inferred where objective manifestations indicate that a person acted with actual awareness.

At trial, Berry testified that she was aware that under the lease, Bliskey was entitled to a deadbolt lock and a night latch. Carol Parker testified that she was aware of installation of different types of keyless night latches. When Bliskey asked Parker for a type of lock by which she could lock herself into her apartment at night she was told that she must provide a key to any type of additional lock placed on her door.

We conclude that based upon the evidence presented, a jury could reasonably infer that Berry acted knowingly in refus-

ing a keyless night latch and Bliskey relied upon the representation. We overrule point six.

Jury Charge Error

By point three, Berry challenges the propriety of the court's submission of an instruction to the jury on subsequent aggravation of Bliskey's original injury. Berry asserts that the trial court reversibly erred by overruling its objection to the subsequent aggravation instruction in the charge.

Texas Rule of Civil Procedure 277 mandates the use of broad-form questions in the court's charge to the jury "whenever feasible," that is, in every instance in which broad form submissions are possible. *Texas Dep't of Human Services v. E.B.*, 802 S.W.2d 647, 649 (Tex.1990) (opinion on rehearing). The court's charge to the jury shall include such instructions and definitions as shall be proper to enable the jury to render a verdict. Tex.R.Civ.P. 277.

█ The trial court has considerable discretion in submitting explanatory instructions and definitions; that is, the trial court has considerably more discretion when submitting instructions than it has in submitting jury questions. *Wisenbarger v. Gonzales Warm Springs Hosp. Inc.*, 789 S.W.2d 688, 694 (Tex.App.—Corpus Christi 1990, writ denied); *Eoff v. Hal & Charlie Peterson Found.*, 811 S.W.2d 187, 192 (Tex.App.—San Antonio 1991, no writ); *Harris v. Harris*, 765 S.W.2d 798, 801 (Tex. App.—Houston [14th Dist.] 1989, writ denied).

█ When an instruction is given, the question on review is whether the instruction is proper. *Atlantic Mut. Ins. Co. v. Middleman*, 661 S.W.2d 182, 187 (Tex. App.—San Antonio 1983, writ ref'd n.r.e.) (definition of proper instructions); Tex. R.Civ.P. 277. An instruction is proper if it finds support in any evidence of probative value and if it might be of some assistance to the jury in answering the questions submitted. *Louisiana & Ark. Ry. Co. v. Blakely*, 773 S.W.2d 595, 598 (Tex.App.— Texarkana 1989, writ denied). An explanatory instruction is improper if it is a mis-

statement of the law as applicable to the facts. *Harris*, 765 S.W.2d at 801. When an instruction is requested and refused, the question on review is whether the instruction was reasonably necessary to enable the jury to render a proper verdict. *Johnson v. Whitehurst*, 652 S.W.2d 441, 447 (Tex.App.—Houston [1st Dist.] 1983, writ ref'd n.r.e.).

█ When a definition is given, the test of sufficiency on review is whether the definition is reasonably clear in performing the function of helping jurors to understand legal words or phrases used so that they may properly answer the questions and render a verdict. *Harris*, 765 S.W.2d at 801.

An improper jury charge requires reversal only when, under the circumstances of the case, including the charge as a whole, and the statements and arguments of counsel, the error was calculated to cause, and probably did cause, the rendition of an improper judgment. *Island Recreational Dev. Corp. v. Republic of Tex. Sav. Ass'n*, 710 S.W.2d 551, 555 (Tex.1986); Tex. R.App.P. 81(b)(1).

Berry complains about an instruction contained in charge question three. Question three, which was conditioned upon the jury answering question one, and finding Berry's negligence a proximate cause of Bliskey's damages, broadly asked, "Find what sum of money, if any, if paid now in cash, would fairly and reasonably compensate Juli Bliskey for the damages, if any, that resulted from the occurrence in question." Berry complains about the following submitted instruction contained in jury question three,

> You are further instructed that if subsequent events not caused by Juli Bliskey aggravate the harmful effects of the original injury, whatever damage may be attributable to such subsequent aggravation of the injury is considered a result produced by the original injury and is recoverable as a part of the damages therein.

Berry contends on appeal that any authorized instruction would also include the words "if any," thereby avoiding a direct

and impermissible comment on the evidence. Additionally, Berry contends that by the instruction submitted, the issue of whether any subsequent aggravation was proximately caused by Berry's negligent conduct was removed from the jury's consideration.

■ In a case when the injured person aggravates the original injury, the original wrongful act is deemed the proximate cause of the entire injury (including subsequent aggravations) provided the acts of the injured person are within the course of conduct of a reasonably prudent person under all the circumstances. *Hoke v. Posner*, 384 S.W.2d 335, 340 (Tex.1964). In the case before us, there is no evidence that Bliskey caused any aggravation of the injury she originally suffered. Additionally, subsequent injuries should be compensated by the tortfeasor *unless* there is a new and independent cause of the subsequent injury. *Orkin Exterminating Co. v. Davis*, 620 S.W.2d 734, 737 (Tex.Civ.App.— Dallas 1981, writ ref'd n.r.e.).

■ In reviewing the trial objections to the court's charge we note that Berry lodged only two objections at trial relating to question three. First, Berry objected that this instruction was a direct and prejudicial comment on the weight of the evidence because the instruction commented on the effect to be given testimony about Bliskey's mental anguish resulting from the perpetrator's escape from jail. Second, Berry objected that the instruction was an improper statement of the law in this case because at the time of the perpetrator's escape from custody, the county was performing a governmental function and thus, there would be no cause of action that Berry could bring for contribution for the county's subsequent negligent conduct. Both objections were overruled.

■ An objection must be specific enough to call the court's attention to the asserted error in the charge. *State Dep't of Highways & Pub. Transp. v. Payne*, 838 S.W.2d 235, 240–41 (Tex.1992). We conclude that the objections raised by Berry did not specifically relate to a comment on the weight of the evidence for the reasons raised on appeal. Additionally, the proper broadly formed damage question did not itemize the amount the jury may have found, if any, as Berry's portion of damages relating to any subsequent aggravation. Therefore, we are unable to determine from the record and the jury's answer to question three whether it awarded any sum of money as damages resulting from the perpetrator's escape from custody.

Reviewing the charge as a whole, and under the circumstances of this case, we conclude that error, if any, did not result in such a denial of Berry's rights that it was reasonably calculated to cause and probably did cause the rendition of an improper judgment. We overrule point three.

■ By point of error four, Berry challenges the trial court's refusal to submit its requested instruction to the jury of its properly pleaded defense of "new and independent cause." Additionally, by point five, Berry contends that the trial court erred in refusing Berry's requested instruction of its properly pleaded defense of "sole cause." Once again, regarding these points of error, we must decide whether the trial court abused its discretion when refusing Berry's requested instructions addressing these two inferential rebuttal defenses. *See Magro v. Ragsdale Bros., Inc.*, 721 S.W.2d 832, 836 (Tex.1986). The purpose of an instruction is to assist the jury, although caution is to be exercised in giving superfluous instructions that tend to nudge or direct the jury away from the real issues in the case. *Sappington v. Younger Transp., Inc.*, 758 S.W.2d 866, 867 (Tex.App.—Corpus Christi 1988, writ denied) (citing *Acord v. General Motors Corp.*, 669 S.W.2d 111, 116 (Tex.1984)). We may not substitute our judgment for that of the trial court, but rather must decide only whether the trial court's actions were arbitrary or unreasonable. *Multi–Moto v. ITT Commercial Finance*, 806 S.W.2d 560, 569–70 (Tex.App.—Dallas 1990, writ denied).

■ The trial court may submit inferential rebuttal defenses, as instructions but not as questions to the jury. *Lemos v.*

*Montez,* 680 S.W.2d 798 (Tex.1984); *McAllen Kentucky Fried Chicken No. 1 Inc. v. Leal,* 627 S.W.2d 480, 483 (Tex.App.—Corpus Christi 1981, writ ref'd n.r.e.); Tex. R.Civ.P. 277. The trial court gave three jury instructions regarding causation, one of which was an instruction on sole proximate cause, an inferential rebuttal defense. That instruction read,

> There may be more than one proximate cause of an event, but if an act or omission of any person not a party to this suit was the "SOLE PROXIMATE CAUSE" of an occurrence, then no act or omission of any other person could have been a proximate cause. By the term "SOLE PROXIMATE CAUSE" is meant the only proximate cause, and if there is more than one proximate cause of an event then no single proximate cause can be the sole proximate cause thereof.

Berry contends that without its requested instructions, the jury was improperly instructed about the law and was denied the opportunity to consider the criminal's conduct in conjunction with its alleged conduct. We disagree.

Berry's requested instructions are elements to be considered by the jury in determining their answer to the general issue of proximate cause and are not separate issues. *See Chemical Express Carriers, Inc. v. French,* 759 S.W.2d 683, 686 (Tex. App.—Corpus Christi 1988, writ denied). The trial court's instructions to the jury about causation were sufficiently based upon the evidence to assist the jury in reaching their verdict without being superfluous.

We conclude that the trial court acted within its discretion when denying these two instructions. The trial court's actions were not arbitrary or unreasonable. Additionally, we cannot say that the trial court acted without reference to guiding rules and principles of law when it refused Berry's requested inferential rebuttal instructions. *E.B.,* 802 S.W.2d at 649; *Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 241–42 (Tex.1985). We overrule points four and five.

Past and Future Damages

By point nineteen, Berry challenges the jury award for past and future medical expenses. Berry contends that the evidence is legally and factually insufficient to support the jury finding that Bliskey suffered $60,000 in past and future medical expenses. Berry contends that Bliskey's recovery of medical expenses should be limited to the amount stipulated by the parties and supported by the evidence. Berry asks that we reform the award of medical expenses.

 In determining whether damages are excessive, we employ the same test as for any factual insufficiency question. *Pope v. Moore,* 711 S.W.2d 622, 624 (Tex. 1986). We examine all the evidence in the record to determine whether sufficient evidence supports the damage award, remitting only if some portion is so factually insufficient or so against the great weight and preponderance of the evidence as to be manifestly unjust. *Id.*

 The parties stipulated that Bliskey's medical and psychological expenses incurred up until the time of trial were $8,872.94. Dr. Quintanilla testified that Bliskey would require approximately $25,-000 worth of psychological treatment in the future for treatment of her posttraumatic stress disorder from which she suffers as a result of the sexual assault. This sum was based upon approximately fifty-four sessions per year for the next five years. Additionally, Quintanilla stated that Bliskey would be "really sick" for the rest of her life. Quintanilla explained that she was functioning because she is bright and because she has "a lot of defenses." Quintanilla anticipated problems in the future particularly if Bliskey were subject to "some male setbacks or some traumatic events." Dr. Quintanilla explained to the jury that any independent, traumatic incident might trigger the trauma again.

Additionally, there was evidence that before her attacker's criminal trial Bliskey required psychological treatment. In fact, her attacker's criminal trial was reset four times and before each trial setting, Bliskey sought counselling to help her cope with

the recurrent psychological trauma which began because she anticipated testifying in the trial and having to face her attacker. The evidence also showed that Bliskey was hospitalized for six to nine days after she learned that her attacker escaped from custody. Also, Bliskey required psychological treatment before this trial began because she was having difficulty dealing with the memories of her sexual assault.

▪ In considering the legal sufficiency of the evidence to support the jury's award of future medical expenses, we must examine the record for any probative evidence which supports the finding and disregard all contrary evidence. *City of San Antonio v. Vela,* 762 S.W.2d 314, 320 (Tex. App.—San Antonio 1988, writ denied) (citing *Garza v. Alviar,* 395 S.W.2d 821, 823 (Tex.1983)).

▪ Texas courts follow the "reasonable probability rule" for future damage for personal injuries. *Harvey v. Culpepper,* 801 S.W.2d 596, 599 (Tex.App.— Corpus Christi 1990, no writ) (citing *Vela,* 762 S.W.2d at 321). While following this rule, Texas courts also consistently hold that the award of future medical expenses is within the jury's discretion. *Id.* No precise evidence is required. *Vela,* 762 S.W.2d at 321. The jury has the right to consider the nature and extent of her injuries, her progress toward recovery under the treatment she has received, the reasonable cost of her medical and hospital treatment in the past, her physical condition at the time of the trial, and it may estimate the necessity for medical and hospital treatment in the future, as well as the reasonable cash value of such future medical treatment and hospital expense. *Id.* (quoting *Edens–Birch Lumber v. Wood,* 139 S.W.2d 881 (Tex.Civ.App.—Beaumont 1940, writ dism'd judgm't. cor.)).

The jury was free to consider not only Dr. Quintanilla's expert testimony but could also consider Bliskey's own testimony about how she has coped with her trauma since the sexual assault. *See Vela,* 762 S.W.2d at 321 (witness need not be medical expert to state own opinion about her physical health). Bliskey testified about her difficulty dealing with the sexual assault, the resulting psychological trauma it caused her, and her difficulty in dealing with everyday life.

From this evidence the jury could have reasonably inferred that Bliskey's medical treatment would extend beyond the five years Dr. Quintanilla testified about for treatment of her posttraumatic stress disorder. We conclude that the award of future medical damages is not so against the great weight and preponderance of the evidence as to be manifestly unjust. We overrule point nineteen.

Punitive Damages

By point seven, Berry challenges the trial court's rulings on punitive damages. The jury found $3,013,760 as actual damages resulting from Berry's negligence and $3,000,000 as actual damages resulting from Berry's deceptive conduct. The jury also found Berry liable for $5,000,000 as common law exemplary damages and $3,000,000 as "additional" DTPA damages.

Berry, by its motion to disregard the jury findings and for judgment n.o.v., contended that Bliskey must elect 1) her theory of recovery and 2) whether to recover the exemplary common law damages or the additional DTPA damages. The trial court ordered Bliskey to elect which set of compensatory damages she wished to recover but did not order her to elect which set of penalty damages she wished to recover.

Bliskey, under protest, elected to recover actual damages under the DTPA. The court, by its final judgment, awarded Bliskey $3,000,000, the sum the jury found were her DTPA actual damages, along with both types of punitive damages. Berry contends that the trial court erred in awarding both types of punitive damages and acted erroneously by failing to apply the single recovery rule to the jury's penalty damage findings.

▪ The single recovery, or one satisfaction rule, is a rule of general acceptance that an injured party is entitled to one satisfaction for sustained injuries. *Stewart Title Guar. Co. v. Sterling,* 822 S.W.2d 1, 7 (Tex.1991) (quoting *Bradshaw v. Bay-*

*lor Univ.*, 126 Tex. 99, 84 S.W.2d 703, 705 (Tex.1935) and addressing double recovery of actual damages). If a jury verdict contains more than one acceptable measure of damages, a plaintiff may be forced to elect prior to judgment the recovery he wants by waiving the surplus damage jury findings. *Kish v. Van Note,* 692 S.W.2d 463, 466–67 (Tex.1985).

Remedies authorized under the DTPA are cumulative of those provided by other laws. *Id.;* Tex.Bus. & Com.Code Ann. § 17.43 (Vernon 1987). However, no recovery of "both actual damages and penalties for the *same act or practice*" shall be permitted under both the DTPA and another law. *Mayo v. John Hancock Mut. Life Ins. Co.,* 711 S.W.2d 5, 6–7 (Tex.1986); Tex. Bus. & Com.Code Ann. § 17.43 (Vernon 1987). Thus, the effect of the DTPA is that it limits a plaintiff from recovering actual and punitive damages for a *specific act* under one law and then recovering actual and punitive damages for *the very same act* under the provisions of the DTPA. *Id.* Therefore, the issue in the case before us is whether there was a single act or whether there were multiple acts.

■■ At trial, the jury found that Berry violated the DTPA which adversely affected Bliskey, and that Berry was grossly negligent. The trial court submitted two questions addressing actual damages to the jury. The first, whose answer was conditioned upon the jury finding Berry negligent, asked what sum, if any, would fairly and reasonably compensate Bliskey for damages "resulting from the occurrence in question." The second, whose answer was conditioned upon the jury finding that Berry engaged in an unconscionable act or course of action and engaged in a deceptive practice relating to Bliskey's request for a second door lock, asked the jury to find what sum of money, if any, would fairly and reasonably compensate Bliskey for damages, if any, she sustained as a result of the acts and/or failures, if any, "that you have found to be a producing cause of damages to her." Thus, the charge submitted separate and distinct damage ques-

tions to the jury on both the negligent acts and the deceptive acts or practices. *Cf. Birchfield v. Texarkana Mem. Hosp.,* 747 S.W.2d 361, 367 (Tex.1987). The *Birchfield* court held that when there is an absence of separate and distinct findings of actual damages on both the negligent acts and the deceptive acts or practices, an award of exemplary damages *and* statutory treble damages would be predicated upon the same findings of actual damages and would amount to a double recovery of punitive damages. *Id.* (citing *Allstate Ins. Co. v. Kelly,* 680 S.W.2d 595, 606 (Tex. App.—Tyler 1984, writ ref'd n.r.e.)).

In this case, the jury gave affirmative answers to separate questions on both theories of liability submitted by the plaintiff. Each separate liability question was followed by a causation question, all of which were answered affirmatively. Answers to separate damage questions followed. The supreme court's requirement of separate and distinct findings of actual damages for each act was met. *See St. Gelais v. Jackson,* 769 S.W.2d 249, 259 (Tex.App.—Houston [14th Dist.] 1988, no writ). The jury found that Bliskey sustained actual damages relating to Berry's separate negligent acts and its deceptive acts. Therefore we conclude that the jury intended to hold Berry liable for both acts alleged and to assess damages for each.

The trial court properly determined that Bliskey suffered only one compensable injury and therefore properly awarded her one recovery for actual damages. Because the jury found that Berry engaged in two different acts however, the trial court did not err in awarding Bliskey both common law exemplary damages and statutory additional damages. The trial court correctly found duplication in Bliskey's compensatory damages and properly allowed Bliskey to elect under which theory to recover her actual damages. Bliskey established that Berry engaged in two separate acts. The DTPA prohibits double recovery for the same act or practice. *See Winkle Chevy–Olds–Pontiac v. Condon,* 830 S.W.2d 740, 744 (Tex.App.—Corpus Christi 1992, writ dism'd). Since the awards of additional damages and punitive damages were based

upon separate jury findings and upon different acts, we find no error in the trial court's judgment granting Bliskey both DTPA additional damages and common law punitive damages. *Id.* We overrule point seven.

Bliskey, by cross-point one, contends that she should not have been required to elect under which theory she would recover her compensatory damages. Bliskey contends that the jury made distinct actual damage findings on both the negligence and DTPA theories, and that the trial court should have rendered a judgment which included the amount the jury found as compensatory damages for negligence. We disagree.

■ The one satisfaction rule applies to prevent a plaintiff from obtaining more than one recovery for the same injury. *Sterling*, 822 S.W.2d at 7. This rule is applied when defendants commit the same act as well as when defendants commit technically different acts which result in a single injury. *Id.*

■ Bliskey argues that the jury found more than one injury because it found two different compensatory damage numbers. Bliskey argues that the $13,760 difference between the negligence damage finding and the DTPA damage finding indicates that the fact finder identified separate injuries.

However, Bliskey does not designate or suggest what these separate injuries might be. Additionally, when the trial court inquired about an explanation for the different damage amounts found by the jury, Bliskey conceded that she did not know what the jury did. By the court's charge, the jury was instructed that they were not to concern themselves with the ultimate recovery amount when answering questions and assessing damage amounts, if any, because the trial court would apply the law to their fact findings at the time of judgment. We conclude that Bliskey suffered one injury and should receive one recovery for her compensatory damages.

■ Additionally, Bliskey argues that procedurally, Berry waived any complaint about a double recovery for compensatory damages because it did not make this objection to the court's jury charge. We disagree. We note that Berry does not complain that the trial court assessed a double recovery of compensatory damages. In fact, the trial court, by its judgment, did not assess a double recovery of compensatory damages. Berry is not complaining in any way about the trial court's action as it relates to the award of compensatory damages.

Texas Rules of Appellate Procedure require that in order for a party to preserve a complaint for appeal, that party must have presented to the trial court a timely request, objection, or motion stating the specific grounds for the ruling desired. Tex. R.App.P. 52(a). Regarding this point of error, the complaining party is Bliskey not Berry. Berry has no complaint about the trial court's action in requiring Bliskey to make an election for recovery of compensatory damages. We conclude that Berry was not required to object at trial to the submission of multiple theories of recovery to the jury. We overrule Bliskey's first cross-point.

■ By its ninth point of error, Berry complains that the trial court erred in awarding exemplary damages because there is no evidence or insufficient evidence of gross negligence or factors that would lead to a recovery of exemplary damages. In order to prove gross negligence, a plaintiff must show that the defendant was consciously, i.e., knowingly, indifferent to his rights, welfare, and safety. *Owens v. Watson*, 806 S.W.2d 871, 874 (Tex.App.— Corpus Christi, 1991, writ denied) (citing *International Armament v. King*, 686 S.W.2d 595, 597 (Tex.1985)). The plaintiff must show that the defendant knew about the peril, but his acts or omissions demonstrated that he or she did not care. *Id.*

■ In determining whether there is some evidence of the jury's finding of gross negligence, we must look to all of the surrounding facts, circumstances, and conditions, and not look to just individual elements or facts. *Burk Royalty v. Walls*, 616 S.W.2d 911, 922 (Tex.1981). All actions

or circumstances indicating a state of mind amounting to a conscious indifference must be examined in deciding if there is some evidence of gross negligence. *Id.*

■ The evidence showed that Harry Caldwell, former police chief for the City of Houston, testified as an expert. His opinion was that the keys and leases at Wilderock were not maintained securely. He testified that if the only security devices at the management office consisted of a cam lock and a pane of glass without any ancillary locks on the window, then common sense dictated that some other device was needed to protect the labeled apartment keys; an alarm or a bell that rings and sounds when people break into the office. Additionally, Caldwell testified that to put apartment numbers on keys and hang the keys on a board, just hanging on a peg-board on the wall and then to have residents' leases in an unlocked cabinet, either in the same office or in the office next to the pegboard was the most gross negligence that he had seen in handling keys in the apartment business. Doctor Christian, Berry's expert, testified that he would not have handled the townhome keys in the same manner as Berry but that he would have used a key cabinet.

We conclude that from the evidence and the surrounding circumstances, the jury's finding of gross negligence on the part of Berry is supported by sufficient evidence. We overrule point nine.

By point ten, Berry contends that the trial court erred in overruling its objection to Caldwell's testimony when he stated that this was a case of gross negligence.

■ At trial, Caldwell was questioned by Bliskey's attorney and was asked whether he had an opinion about Berry's handling of Bliskey's apartment key. Berry's attorney objected that the question was outside of Caldwell's expertise, and invaded the province of the jury by asking him for a legal conclusion. The trial court overruled Berry's objection.

Testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact. Tex.R.Civ.Evid. 704. Fairness and efficiency dictate that an expert may state an opinion on a mixed question of law and fact as long as the opinion is confined to the relevant issues and is based on proper legal concepts. *Birchfield,* 747 S.W.2d at 365. Jurors realize that they are the final triers of fact on an issue. *Louder v. DeLeon,* 754 S.W.2d 148, 149 (Tex.1988). Jurors may accept or reject an expert's view. *Id.* Therefore, "there is little danger in an expert's answer to an all-embracing question on a mixed question of law and fact." *Id.* We overrule point ten.

By point eleven, Berry contends that the assessment of exemplary damages violated its federal and state constitutional rights. Regarding their assertion of violation of federal constitutional rights, Berry contends that the questions and instructions to the jury about exemplary damages violated its due process rights under the fourteenth amendment of the United States Constitution, were vague because they did not confine the jury to deterrence and retribution, and also that the instruction failed to limit the amount the jury could award to a reasonable amount. In support of its contention, Berry cites *Pacific Mut. Life Ins. Co. v. Haslip,* 499 U.S. 1, 111 S.Ct. 1032, 113 L.Ed.2d 1 (1991).

The jury question and instruction about exemplary damages against Berry was as follows:

> What sum of money should be awarded against Berry Property Management, Inc., as exemplary damages, if any, for the injuries to Juli Bliskey?
>
> "EXEMPLARY DAMAGES" means an amount that you may in your discretion award as an example to others for the good of the public, in the interest of society at large to deter the commission of similar wrongs and as a penalty by way of punishment, in addition to any amount that you may have found as actual damages.
>
> Additionally when assessing exemplary damages, you may consider such things as compensation for inconvenience, attorneys' fees, expenses of liti-

gation an (sic) other expenses not recoverable as actual damages.

In answering questions about damages, answer each question separately. Do not increase or reduce the amount in one answer because of your answer to any other question about damages. Do not speculate about what any party's ultimate recovery may or may not be. Any recovery will be determined by the court when it applies the law to your answers at the time of judgment.

Berry also asserts that this instruction allowed the jury to assess damages to compensate Bliskey and her attorney.

The *Haslip* Court held that the common-law method for assessing punitive damages is not so inherently unfair as to deny due process and be *per se* unconstitutional. *Id.* at ——, 111 S.Ct. at 1043. Additionally, the *Haslip* Court held that general concerns of reasonableness and adequate guidance from the court when the case is tried before a jury properly enter into constitutional considerations. *Id.* The *Haslip* Court determined that the punitive damages assessed against Pacific Mutual did not violate the United States Constitution's due process clause of the fourteenth amendment. The Court noted that when reviewing the jury instructions that the trial court properly described the purpose of punitive damages under Alabama law. *Id.* at ——, 111 S.Ct. at 1044. The Court noted that the instructions gave significant discretion to the jury in its determination of punitive damages; but that discretion was not unlimited. *Id.* Specifically, the Court noted that the instructions enlightened the jury as to the punitive damages' nature and purpose, identified the damages as punishment for civil wrongdoing of the kind involved, and explained that their imposition was not compulsory. *Id.* The Court noted that as long as the jury's discretion is exercised within reasonable constraints, due process is satisfied. *Id.*

■ In Texas, punitive damages are intended to punish the defendant and to set an example to others. *Cavnar v. Quality Control Parking, Inc.*, 696 S.W.2d 549, 555–56 (Tex.1985). Texas case law indi-cates that the public policy for exemplary damages includes equally important considerations other than punishment of the wrongdoer. *Hofer v. Lavender*, 679 S.W.2d 470, 474 (Tex.1984). Additionally, in Texas, the purpose of exemplary damages is to reimburse the plaintiff for losses too remote to be considered as elements of strict compensation. *Id.* Also, exemplary damages are intended to set an example for the good of the public and to compensate for inconvenience and attorneys' fees. *Id.*

■ In reviewing the portion of the charge related to punitive damages, we find no error. We conclude that the trial court did not err when instructing the jury about exemplary damages. The trial court instructed on the intent and purpose of punitive damages as well as giving the jury factors they could consider in determining the amount of exemplary damages. We conclude that Berry's federal constitutional right to due process was not violated.

Berry also complains by point eleven that the $5,000,000 exemplary damage award violates the Texas Constitution article I, section 13. Berry contends that the maximum fine assessed against a criminal who actually perpetrates a sexual assault is only $10,000, thus, this civil-type of fine is excessive.

■ The Texas excessive fines provision states: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel or unusual punishment inflicted." Tex. Const. Ann. art. I, § 13 (Vernon 1984). We note that "fines" as used in article I, section 13 includes civil penalties. *See Celotex Corp. v. Tate*, 797 S.W.2d 197, 208 (Tex.App.—Corpus Christi 1990, no writ) (quoting *Pennington v. Singleton*, 606 S.W.2d 682, 690 (Tex.1980)). In the case before us, and in the absence of any state action, we find this provision of the Texas Constitution does not apply to an award of common law punitive damages as between two private civil litigants. *Id.* We overrule point eleven.

By point twelve, Berry contends that the $5,000,000 assessment of exemplary damages for negligence is excessive.

 Exemplary damages must be reasonably proportionate to the actual damages found but there can be no set rule or ratio between the amount of actual and exemplary damages which will be considered reasonable. *Owens*, 806 S.W.2d at 875 (citing *Alamo Nat'l Bank v. Kraus*, 616 S.W.2d 908, 910 (Tex.1981)). This determination is dependant upon the facts of a particular case. *Id.* When we review an award of punitive damages, factors to be considered are 1) the nature of the wrong, 2) the character of the conduct involved, 3) the degree of culpability of the wrongdoer, 4) the situation and sensitivities of the parties involved, and 5) the extent to which the conduct offends a public sense of justice and propriety. *Id.*

 Unless the award is so large as to indicate that it is a result of passion, or prejudice, or that the evidence has been disregarded, the verdict of the jury is conclusive and will not be set aside as excessive, either by the trial court or on appeal. *Kraus v. Alamo Nat'l Bank*, 586 S.W.2d 202, 208 (Tex.Civ.App.—Waco 1979), *affirmed*, 616 S.W.2d at 910.

 When viewing the evidence in light of the applicable standard, we conclude that the amount assessed as exemplary damages bears a reasonable relationship to the actual damages awarded by the jury, was not excessive, and does not require a remittitur. We overrule point twelve.

Attorney's Fees

 By point sixteen, Berry complains about the award of attorneys' fees. Berry contends that because the court instructed the jury by its exemplary damage instruction to jury question fifteen that it could consider attorneys' fees as a part of the exemplary damage amount, and because the jury found, when answering question eleven, that Bliskey should recover 33⅓% as attorneys' fees, that the court awarded Bliskey a double recovery of her attorneys' fees. We disagree.

 Generally, attorneys' fees are not recoverable unless provided for by a statute or a contract between the parties. *First City Bank—Farmers Branch v. Guex*, 677 S.W.2d 25, 29 (Tex.1984); *Olson v. Central Power & Light Co.*, 803 S.W.2d 808, 814 (Tex.App.—Corpus Christi 1991, writ denied). The DTPA provides that a consumer who prevails shall be awarded court costs and reasonable and necessary attorneys' fees. Tex.Bus. & Com.Code Ann. § 17.50(d) (Vernon 1987). In a suit for negligence, while attorneys' fees are not recoverable as actual damages, they may be considered by a jury when determining what amount to award a plaintiff as exemplary damages. *See Fitz v. Toungate*, 419 S.W.2d 708, 710 (Tex.Civ.App.—Austin 1967, writ ref'd n.r.e.); *Allison v. Simmons*, 306 S.W.2d 206, 211 (Tex.Civ. App.—Waco 1957, writ ref'd n.r.e.).

 In order to show the reasonableness and necessity of attorneys' fees, the plaintiff is required to show that the fees were incurred while suing the defendant sought to be charged with the fees on a claim which allows recovery of such fees. *Sterling*, 822 S.W.2d at 10. Amount and reasonableness of attorneys' fees is a question of fact involving various intangible factors, and a trial court's award of attorneys' fees will not be disturbed absent an abuse of discretion. *Gonzalez v. Nielson*, 770 S.W.2d 99, 102 (Tex.App.—Corpus Christi 1989, writ denied).

We note that the 33⅓% related to the cause of action for violating the DTPA. Additionally, because the court's instruction about exemplary damages included a statement that the jury *could* consider the award of attorneys' fees when awarding exemplary damages, does not necessarily lead to the conclusion that Bliskey received a double recovery of her attorneys' fees. We conclude that the trial court did not abuse its discretion in awarding 33⅓% of Bliskey's DTPA damages as attorneys' fees and awarding the full amount the jury found as exemplary damages. We overrule point sixteen.

670

Prejudgment Interest

By point seventeen, Berry contends that the trial court erred by permitting Bliskey to recover prejudgment interest twice on attorneys' fees. Berry asserts that the double recovery of prejudgment interest should be deleted from the judgment. We note that Berry makes no complaint about the trial court's award of prejudgment interest on the DTPA additional damages.

Berry asserts that at the August 20, 1991, hearing on Bliskey's motion for judgment, Bliskey submitted to the trial court an exhibit calculating prejudgment interest and attorneys' fees as follows:

| DESCRIPTION | AMOUNT | PRE–J. INTEREST |
|---|---|---|
| DTPA Actuals | $3,060,000.00 | $1,149,384.96 |
| DTPA Additionals | 3,000,000.00 | 1,126,848.00 |
| Atty. Fees (⅓ of all above = $8,336,232.96) | 2,778,744.32 | 1,043,740.82 |
| Punitive Damages | 5,000,000.00 | ——— |
| | $13,838,744.32 | 3,319,973.78 |
| | $17,158,718.10 | |
| Credit | $60,000.00 | |
| | $17,098,718.10 | |

The trial court then awarded Bliskey attorneys' fees of $3,822,485.14. Berry contends that the trial court reached this sum by adding $2,778,744.32 and $1,043,740.82.

■ Prejudgment interest is not recoverable on attorneys' fees awarded. *Hervey v. Passero*, 658 S.W.2d 148, 148–49 (Tex. 1983); *see also Southwestern Bell Tel. Co. v. Vollmer*, 805 S.W.2d 825, 834 (Tex. App.—Corpus Christi 1991, writ denied); *McCann v. Brown*, 725 S.W.2d 822, 826 (Tex.App.—Fort Worth 1987, no writ).

We conclude that the trial court improperly awarded Bliskey prejudgment interest on the attorneys' fees. We sustain Berry's seventeenth point of error. We therefore reverse the amount awarded as prejudgment interest on the attorneys' fees.

Calculation of Attorneys' Fees

By cross-point, Bliskey contends that the trial court erred when calculating her attorneys' fees and seeks a modification of the judgment to reflect a different calculation. Bliskey contends that the trial court awarded attorneys' fees by multiplying the total damage award of $8,336,232.96 by 33⅓%.

Bliskey contends that the trial court failed to give full effect to the jury's answer that she was entitled to recover 33⅓% as attorneys' fees. Question eleven of the charge asked the jury:

What reasonable fee for necessary services of Juli Bliskey's attorneys in this case, stated as a percentage of Juli Bliskey's recovery

Answer by stating a percentage.

The jury answered stating "33⅓%."

Bliskey complains that the trial court erred by failing to add attorneys' fees *before* multiplying the quantum by 33⅓%. We disagree.

■ Under the DTPA, a consumer may recover reasonable and necessary attorneys' fees. Tex.Bus. & Com.Code Ann. § 17.50(d) (Vernon 1987). Without this provision in the DTPA, a consumer would have to pay its attorneys' fees out of any damage recovery it received. As an example, in Bliskey's position, she would have to pay her attorneys' fees out of the sum of money she recovered in her lawsuit. However, because Bliskey recovered damages under

the DTPA, her attorneys' fees were recoverable under the statute. The winning plaintiff is entitled to recover for the full amount of damages suffered as a result of the defendant's violation of the DTPA, and the plaintiff's recovery does not bear the burden of the costs necessarily incurred in prosecuting the defendant for a deceptive act. *See Goodyear Tire & Rubber Co. v. Portilla*, 836 S.W.2d 664, 671–72 (Tex. App.—Corpus Christi 1992, writ granted) (to add attorneys' fees to damage recovery and then apply percentage found by jury would award a percentage in excess of what jury found reasonable). Bliskey's fee agreement was entered into evidence at trial. It provided that, in consideration for services, Bliskey would pay her attorneys 33⅓% of all monies, interest, or property recovered.

We find no error in the trial court's calculation method of applying the 33⅓% to the total sum of damages. By this method, Bliskey recovers the full amount of damages the jury determined she suffered without having to bear the cost of her attorneys' fees. We overrule Bliskey's second cross-point.

Applying Co–Defendants' Settlement

■ By point eighteen, Berry asserts that the trial court erred when it deducted the amount of Bliskey's settlement with the co-defendants *after* calculating prejudgment interest. At trial the court credited the $60,000 settlement as the last calculation, thus, it did so after calculating prejudgment interest. Berry contends that the settlement should have been deducted *before* calculating prejudgment interest.

Recently, the Supreme Court of Texas wrote that applying a credit prior to trebling damages denied the injured plaintiff the full award required by the DTPA, frustrated the legislative intent to punish and deter such violations, and discouraged settlements. *Sterling*, 822 S.W.2d at 9. The *Sterling* court concluded that any credit for settlements made with other alleged joint tortfeasors must be applied after the trebling of actual damages. *Id.* We note that procedurally when the *Sterling* court assessed prejudgment interest, it did so *after* (1) trebling damages, (2) applying the settlement credit, and (3) calculating prejudgment interest of the final damage amount. *Id.* at 12.

We agree with Berry and conclude that the credit should be applied *before* calculating prejudgment interest. We sustain point eighteen.

Recalculation

When the judgment of the trial court shall be reversed, we shall proceed to render such judgment as the court below should have rendered except when it is necessary to remand for further proceedings. Tex.R.App.P. 81(c). Because all that remains for disposition of this appeal is (1) a recalculation applying the co-defendants' settlement differently and (2) reversing the award of prejudgment interest on attorneys' fees, we will figure the calculation in accordance with our opinion rather than remanding the case to the trial court.

The interest factor we will use to figure prejudgment interest is ten percent for three years and 276 days (.375616) which is the same factor the trial court applied when making its calculation. We compute the calculation as follows:

| Description | Amount |
|---|---|
| DTPA Actual Damages | $ 3,060,000.00 |
| DTPA Additional Damages | $ 3,000,000.00 |
| Damages | 6,060,000.00 |
| Credit for Settlement | < 60,000.00> |
| Total Damages | 6,000,000.00 |
| Prejudgment Interest (.375616) | 2,253,696.00 |

| Description | Amount |
|---|---|
| Attorneys' Fees | 2,748,480.76 |
| (33⅓% of 8,253,696.00) | |
| Punitive Damages | 5,000,000.00 |
| Total Award to Bliskey | $16,002,176.76 |

We note that when the trial court calculated the award to Bliskey, it assessed prejudgment interest on the DTPA additional damages. As a general rule, prejudgment interest is not calculated on DTPA additional damages. *See Vail v. Texas Farm Bureau Mutual Ins. Co.*, 754 S.W.2d 129, 137 (Tex.1989) (citing *Cavnar*, 696 S.W.2d at 555). However, because Berry did not preserve this error for our review, in our calculation we also included prejudgment interest on the additional damages. Tex.R.App.P. 52(a).

As modified, we affirm the trial court's judgment.

KENNEDY, J., not participating.