**AFFIRMED; Opinion Filed April 24, 2014.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-12-01316-CV

**TAMMI HAWTHORNE AS NEXT FRIEND OF E.K., Appellant**
**V.**
**HUFFINES COMMUNITIES, INC., PREMIER COMMUNITIES MANAGEMENT COMPANY, INC., PREMIER COMMUNITIES MANAGEMENT COMPANY, INC. D/B/A PROVIDENCE HOMEOWNERS ASSOCIATION AND BEARFOOT MANAGEMENT, LLC, Appellees**

**On Appeal from the 366th Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 366-01936-2011**

## MEMORANDUM OPINION

Before Justices O'Neill, Myers, and Brown
Opinion by Justice Myers

This case concerns the liability of the managers and owners of a community swimming pool for the sexual assault of a thirteen-year-old patron, E.K., by the pool's lifeguard when the assault occurred away from the pool in the middle of the night. The trial court granted the motions for summary judgment of Bearfoot Management, LLC (the pool management and lifeguarding company); Huffines Communities, Inc. (the developer of the community); Premier Communities Management Company, Inc. (the company controlling the homeowner's association); and Premier Communities Management Company, Inc. d/b/a Providence Homeowners Association (the homeowner's association). Tammi Hawthorne, as next friend of

E.K.,[1] brings two issues on appeal asserting (1) the trial court erred by granting the motions for summary judgment and (2) that appellant pleaded a valid DTPA[2] claim. We affirm the trial court's judgment.

**BACKGROUND**

On Sunday, May 3, 2009,[3] E.K., a thirteen-year-old girl who lived in Providence Community, went to the community's swimming pool. When E.K. arrived at the pool, she was required to fill in a sign-in sheet requiring the patron's name and a telephone number, and she entered her personal cell phone number. While at the pool that day, she talked to Shane Wilkins, the twenty-one-year-old lifeguard hired by Bearfoot. Wilkins learned E.K.'s cell phone number from the sign-in sheet. After the pool closed for the day, Wilkins began exchanging cell phone text messages with E.K. The next day, Wilkins and E.K. exchanged text messages and phone calls about meeting. That night, after E.K.'s mother went to bed, E.K. left the house and walked to the park near the pool to meet some friends; however, her friends did not show up. While E.K. was waiting, she received a text from Wilkins asking where she was. She told Wilkins she was at the pool area. Wilkins drove to E.K.'s neighborhood and met her at about 1:00 or 2:00 in the morning. E.K. got into Wilkins's car, and Wilkins sexually assaulted her.

Wilkins was not at work when he exchanged text messages and phone calls with E.K., agreed to meet E.K., drove to E.K.'s neighborhood, or when he assaulted her. Wilkins subsequently pleaded guilty to indecency with a child and aggravated sexual assault. Wilkins testified in his deposition that he knew E.K. was a minor and that when he went to meet her he

---

[1] Appellant's petition and notice of appeal state they were brought by "E.K., a Minor Child, and Tammi Hawthorne, Next Friend." A minor cannot bring suit except through a next friend, legal guardian, or guardian ad litem. *See* TEX. R. CIV. P. 44; *Maes v. El Paso Orthopaedic Surgery Group, P.A.*, 385 S.W.3d 694, 698 (Tex. App.—El Paso 2012, pet. denied). The petition does not indicate that Hawthorne brought suit in her individual capacity. Accordingly, we have determined there is only one appellant in this case, Tammi Hawthorne as next friend of E.K.

[2] Deceptive Trade Practices-Consumer Protection Act, TEX. BUS. & COM. CODE ANN. §§ 17.41–.63 (West 2011 & Supp. 2013).

[3] E.K. and Wilkins testified they could not remember whether they went to the pool on May 2 or May 3. However, the sign-in sheet with E.K.'s name is dated May 3, 2009.

"figured" they "might have sex." He also testified that although he was not told by appellees not to have a sexual relationship with a minor, he already knew that was something he should not do.

Appellant sued appellees and Wilkins. Appellant alleged each of the appellees failed "to adequately supervise employees and otherwise protect its residents and invited guests from sexual predators." Appellant also alleged that Premier Communities and the homeowners association breached their duty to protect E.K.'s personal contact information from misuse by allowing Wilkins access to the information and by failing to ensure that E.K.'s contact information was not utilized by its employees for improper purposes. Appellant also alleged that appellees violated the DTPA by representing that the recreational facilities were safe and that the community was "significant, unique, fun and tranquil."[4] In her responses to appellees' motions for summary judgment, appellant asserts that appellees "acted in direct contravention to this assertion by intentionally designing a sign-in sheet that elicited a minor's personal contact information." She alleged this violation of the DTPA was intentional.

Appellees moved separately for summary judgment, which the trial court granted. Appellees then moved to sever appellant's claims against them from the claims against Wilkins, which the court granted. Appellant now appeals the trial court's granting of appellees' motions for summary judgment.

## SUMMARY JUDGMENT

In her first issue, appellant contends the trial court erred by granting appellees' motions for summary judgment. The standard for reviewing a traditional summary judgment is well established. *See Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548–49 (Tex. 1985); *McAfee, Inc. v. Agilysys, Inc.*, 316 S.W.3d 820, 825 (Tex. App.—Dallas 2010, no pet.). The movant has

---

[4] The alleged representation was part of "Must Read Important Information" about the homeowners association. The full statement was "DEVELOPER—Huffines Communities[TM] A 'Huffines' community is significant, unique, fun and tranquil, but more importantly, it is a way [of] life."

the burden of showing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c). In deciding whether a disputed material fact issue exists precluding summary judgment, evidence favorable to the nonmovant will be taken as true. *Nixon*, 690 S.W.2d at 549; *In re Estate of Berry*, 280 S.W.3d 478, 480 (Tex. App.—Dallas 2009, no pet.). Every reasonable inference must be indulged in favor of the nonmovant and any doubts resolved in its favor. *City of Keller v. Wilson*, 168 S.W.3d 802, 824 (Tex. 2005). We review a summary judgment de novo to determine whether a party's right to prevail is established as a matter of law. *Dickey v. Club Corp.*, 12 S.W.3d 172, 175 (Tex. App.—Dallas 2000, pet. denied).

We review a no-evidence summary judgment under the same legal sufficiency standard used to review a directed verdict. *See* TEX. R. CIV. P. 166a(i); *Flood v. Katz*, 294 S.W.3d 756, 762 (Tex. App.—Dallas 2009, pet. denied). Thus, we must determine whether the nonmovant produced more than a scintilla of probative evidence to raise a fact issue on the material questions presented. *See id.* When analyzing a no-evidence summary judgment, we consider all the evidence in the light most favorable to the nonmovant, indulging every reasonable inference and resolving any doubts against the movant. *Sudan v. Sudan*, 199 S.W.3d 291, 292 (Tex. 2006) (quoting *City of Keller v. Wilson*, 168 S.W.3d 802, 824 (Tex. 2005)). A no-evidence summary judgment is improperly granted if the respondent brings forth more than a scintilla of probative evidence to raise a genuine issue of material fact. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003). "More than a scintilla of evidence exists when the evidence rises to a level that would enable reasonable, fair-minded persons to differ in their conclusions." *Id.* (quoting *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997)). "Less than a scintilla of evidence exists when the evidence is 'so weak as to do no more than create a mere

surmise or suspicion' of a fact." *Id.* (quoting *Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex. 1983)).

## CAUSATION

On appeal, appellant argues the trial court erred by granting the motions for summary judgment on the allegation that appellees were negligent for failing to safeguard E.K.'s personal contact information, her cell phone number, and that they violated the DTPA by designing a sign-in sheet that elicited personal contact information from minors, which appellant asserts was inconsistent with appellees' representation that the community was "significant, unique, fun and tranquil."[5]

Appellees' grounds for summary judgment included the assertion that the requirement that E.K. list a telephone number on the sign-in sheet and their failure to safeguard E.K.'s cell phone number were not the cause of her injuries. They also asserted there was no evidence that their alleged conduct caused E.K.'s damages. "The elements of a negligence cause of action are the existence of a legal duty, a breach of that duty, and damages proximately caused by the breach." *Rodriguez-Escobar v. Goss*, 392 S.W.3d 109, 113 (Tex. 2013) (quoting *IHS Cedars Treatment Ctr. of De Soto, Tex., Inc. v. Mason*, 143 S.W.3d 794, 798 (Tex. 2004)). For negligent conduct to be the proximate cause of an injury, it must be both the cause in fact and the foreseeable cause of the injury. *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 582 (Tex. 2007). These elements cannot be satisfied by mere conjecture, guess, or speculation. *IHS Cedars Treatment Ctr. of DeSoto, Tex., Inc. v. Mason*, 143 S.W.3d 794, 798–99 (Tex. 2004).

Under the DTPA, a consumer can recover economic and mental-anguish damages for a deceptive trade practice that is the "producing cause" of those damages. TEX. BUS. & COM.

---

[5] Appellant does not argue on appeal that the trial court erred by granting the motions for summary judgment on her allegations that appellees were negligent for failing to supervise Wilkins.

CODE ANN. § 17.50(a)(1) (West 2011). "Producing cause" under the DTPA and "cause in fact" for negligence are defined the same: whether the defendant's conduct was a substantial factor in bringing about the injury that would not otherwise have occurred. *Prudential Ins. Co. of Am. v. Jefferson Assocs., Ltd.*, 896 S.W.2d 156, 161 (Tex. 1995); *S & I Mgmt., Inc. v. Choi*, 331 S.W.3d 849, 856 (Tex. App.—Dallas 2011, no pet.).

> The supreme court, quoting the Restatement, discussed the meaning of "substantial":

> The word "substantial" is used to denote the fact that the defendant's conduct has such an effect in producing the harm as to lead reasonable men to regard it as a cause, using that word in the popular sense, in which there always lurks the idea of responsibility, rather than in the so-called "philosophic sense," which includes every one of the great number of events without which any happening would not have occurred. Each of these events is a cause in the so-called "philosophic sense," yet the effect of many of them is so insignificant that no ordinary mind would think of them as causes.

*Lear Siegler, Inc. v. Perez*, 819 S.W.2d 470, 472 (Tex. 1991) (quoting RESTATEMENT (SECOND) OF TORTS § 431 comment a (1965)); *see id.* at 472 n.1 (stating discussion of legal cause and philosophic cause are the same for "producing cause"). Cause in fact is not shown if the defendant's negligence or deceptive trade practice did no more than furnish a condition which made the injury possible. *Doe v. Boys Clubs of Greater Dall., Inc.*, 907 S.W.2d 472, 477 (Tex. 1995) (negligence); *Bryan v. S.A.S.*, 416 S.W.3d 52, 59–60 (Tex. App.—Houston [1st Dist.] 2013, pet. filed) (DTPA). For conduct to be the cause in fact, the evidence must show the injuries were "the natural and probable result" of the conduct. *Doe*, 907 S.W.2d at 477; *Connaway v. Vill. Farms, L.P.*, 200 S.W.3d 353, 356 (Tex. App.—Dallas 2006, no pet.). "In other words, even if the injury would not have happened but for the defendant's conduct, the connection between the defendant and the plaintiff's injuries simply may be too attenuated to constitute legal cause." *Doe*, 907 S.W.2d at 477.

Even if the sexual assault would not have occurred if appellees had not required E.K. to provide a telephone number or had prevented Wilkins from having access to the sign-in sheet,

we conclude E.K.'s injuries suffered in the sexual assault were too attenuated from the sign-in sheet's requirements and from Wilkins's access to the cell phone number to constitute a cause in fact of her injuries. Appellees' requiring E.K. to provide a telephone number and its failure to safeguard her cell phone number were the first of a chain of events leading to the sexual assault. The sign-in sheet's requirement of a telephone number and appellees' failure to safeguard E.K.'s cell phone number from Wilkins did no more than furnish a condition that made E.K.'s injury possible. The "natural and probable result" of appellees' requiring E.K. to provide a telephone number and their failure to protect it would have been unwanted texts and cell phone calls, not sexual assault.

In *Doe v. Boys Club of Greater Dallas, Inc.*, Boyd Mullens volunteered at the Boys Club as part of the community-service requirements of the conditions of his probation for the offense of driving while intoxicated. *Doe*, 907 S.W.2d at 475. The Coe family met Mullens at the Boys Club, and after they got to know him, he became a trusted acquaintance, family friend, and frequent visitor in the Coe household. *Id.* With regard to its volunteers, like Mullens, the Boys Club told the Coes it "checked them out thoroughly." *Id.* at 476. This was false; the Boys Club did no checking of Mullens's background. *Id.* at 475. Mullens proposed to Mr. and Mrs. Coe that he take their two grandsons camping. Mrs. Coe asked the Boys Club about Mullens, and its personnel told her that Mullens was a volunteer and that "he seemed to be okay." *Id.* at 476. They also told her that the club could not make the decision for her about whether to let Mullens take her grandsons camping and that she would have to make that decision herself. Mrs. Coe allowed Mullens to take the children camping, and he sexually abused them. *Id.* The Coes sued the Boys Club, and the trial court granted the Boys Club's motion for summary judgment. *Id.* The supreme court affirmed the trial court and stated that Mullens's presence at the Boys Club, which is how he met the Coes, "was but a preliminary condition in the course of events which

made possible his assaults." *Id.* at 478. Likewise, in this case, appellees' requirement that E.K. provide a telephone number and their failure to safeguard E.K.'s cell phone number were only "preliminary condition[s] in the course of events" that made Wilkins's assault possible.

Appellant also cites *Berry Property Management, Inc. v. Bliskey*, 850 S.W.2d 644 (Tex. App.—Corpus Christi 1993, writ granted, writ dism'd by agr.). In that case, Bliskey was a tenant in a group of apartments managed by Berry Property. *Id.* at 651. One night, an intruder broke into Berry Property's office, went through the resident files to find the apartment of a single woman living alone, and found that Bliskey fit that description. The keys for all the apartments were hanging on a pegboard in the office and identified by apartment number. The intruder took the key for Bliskey's unit, entered her apartment, and sexually assaulted her. Bliskey sued Berry Property, alleging it was negligent in how it handled the door keys. *Id.* During the jury trial, a former police chief testified that having the lease information in an unlocked file cabinet next to a pegboard with the keys identified by unit number was "unconscionable." *Id.* at 654. The owner of Berry Property testified she was aware of sexual assaults similar to Bliskey's occurring, and she testified in her deposition that it was "foreseeable that somebody is going to have this happen to them." *Id.* at 657. In light of this evidence, the Austin Court of Appeals concluded there was sufficient evidence to support the jury's finding that the negligent mishandling of the keys was a proximate cause of Bliskey's sexual assault. *Id.*

The burglary of an apartment with the assault of a resident in the apartment is a natural and probable result of management's negligent failure to safeguard the apartment keys. The key gave the intruder the ability to be physically present with Bliskey. A cell phone number, however, is not a key to an apartment. A cell phone number provides only remote access to the person (if the person chooses to answer the phone or respond to the text message). It does not provide the means for physical presence that an apartment key provides, and a sexual assault

–8–

cannot occur without the criminal being physically present with the victim. *Berry* is distinguishable.

Appellant also argues that a tortfeasor's negligence will not be excused if the actions of the third party are the foreseeable result of the original tortfeasor's negligence because prior incidents of the same general character have occurred. Appellant cites *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546 (Tex. 1985), in support of her argument. In *Nixon*, a ten-year-old girl was abducted on the sidewalk. The assailant dragged her across the street taking her "directly to a vacant apartment," and sexually assaulted her. *Id.* at 547. The apartment's doors and windows were not secured, which was a violation of a Dallas city ordinance. The supreme court stated there was evidence that the crime would not have occurred but for the failure to comply with the ordinance by the owner and manager of the apartments:

> [A] reasonable inference exists that, but for Mr. Property's failure to comply with the ordinance regarding maintenance of its apartment complex, this crime would never have taken place. There is evidence that the assailant took R.M.V. "directly to a vacant apartment," the inference being that the assailant was acutely aware of the vacant unit's existence and embarked upon his course of criminal conduct at this particular time and place knowing that this unit was an easily accessible place in which to perpetrate this assault in isolation.

*Id.* at 549. The supreme court stated that the criminal conduct of a third party does not excuse the tortfeasor's negligence when the criminal conduct is a foreseeable result of the negligence. *Id.* at 550. The court stated that although there had not been previous incidents of sexual assault at the apartments, the "litany of prior crimes, including other violent and assaultive crime," at the apartment complex, together with testimony that vagrants frequented the area, raised a genuine issue of material fact as to the foreseeability of the sexual assault. *Id.* at 550–51. In the case before us, there is no evidence of any other crime at the pool or in the community. The record also shows that Wilkins had never been arrested before for any offense. The record does not raise a fact issue on incidents of the same general character having occurred.

–9–

Appellant also argues that appellees had or should have had "specialized knowledge of the potential dangers of running a pool, including the mingling of young people of the opposite sex dressed in bikinis and swim suits." Appellant cites *Baylor Medical Plaza Services Corp. v. Kidd*, 834 S.W.2d 69 (Tex. App.—Texarkana 1992, writ denied). In that case, Baylor received in the mail bottles of benzaldehyde (concentrated bitter almond oil). When Baylor determined it had too many bottles, it returned two of the bottles by mail. The bottles broke in transit, and Claude Kidd, a postal worker, was assigned the task of mopping up the benzaldehyde. Kidd collapsed after inhaling the fumes and was taken to the hospital. Kidd sued Baylor alleging it was negligent. *Id.* at 72. In discussing whether Baylor's negligent packaging of the benzaldehyde bottles caused Kidd's injuries, the court of appeals stated,

> A person or company is not responsible for a consequence which is merely possible, according to occasional experience, but a person or company is responsible for a consequence which is probable, according to ordinary and usual experience. To impose responsibility for negligence, it must have been foreseeable that this event or some similar event would result as a natural and probable consequence.

*Id.* at 75. In this case, as discussed above, the only "natural and probable consequence" of an injurious nature flowing from an unauthorized person's seeing a pool patron's cell phone number would be unwanted text messages and cell phone calls. Sexual assault, however, is not the natural and probable result of requiring a pool patron to list a telephone number on a sign-in sheet or of failing to prevent access to the telephone numbers on the sheet, even when the pool patrons are "young people of the opposite sex dressed in bikinis and swim suits."

Appellant also cites to *Amaya v. Potter*, 94 S.W.3d 856 (Tex. App.—Eastland 2002, pet. denied). In that case, a used-car dealer in a high crime area was following his practice of starting all of the vehicles in the morning. With the vehicles running, the dealer went into the office to answer a telephone call. A thief then stole one of the running vehicles. The dealer told an independent contractor, who was repairing the door on a van belonging to the dealer, to follow

–10–

the thief, which the repairman did. After following the thief at a high rate of speed, the repairman flagged down a policeman, who went in search of the thief. *Id.* at 859. The thief crossed the road's median into oncoming traffic, where he collided with the plaintiffs. *Id.* at 860. The plaintiffs sued the dealer and the repairman under a variety of negligence theories, including that the dealer had negligently entrusted the van to the repairman by requesting the repairman undertake a reckless use of the van by pursuing the thief. *Id.* at 860, 866. The trial court granted summary judgment for the dealer. *Id.* at 860. The court of appeals reversed the grant of summary judgment on negligent entrustment concluding:

> It is reasonably foreseeable that a driver of a stolen vehicle will operate the vehicle in a negligent or reckless manner as he makes his flight from the scene of the theft if being chased. The entrustment of a vehicle to another individual for the purpose of pursuing the stolen vehicle should heighten the vehicle's owner [sic] apprehension that the thief will operate the vehicle in a reckless manner.

*Id.* at 866. In that case, the evidence raised a fact issue that an injury would be the natural probable result of the dealer's entrusting the repair man with the van to chase after the thief. *Id.* In this case, however, sexual assault is not a natural and probable result of requiring E.K. to provide a telephone number on the sign-in sheet or of the failure to safeguard E.K.'s cell phone number.

Appellees established as a matter of law that their requirement that pool patrons provide a telephone number on a sign-in sheet and their failure to safeguard E.K.'s cell phone number, which were the alleged acts of negligence and the DTPA violation, were not a cause in fact of the injuries E.K. suffered from Wilkins's sexual assault. Appellant has presented no evidence that appellees' requirement that pool patrons list a telephone number on a sign-in sheet and appellees' failure to safeguard E.K.'s cell phone number was a cause in fact of the sexual assault. Because appellees conclusively disproved the element of causation in appellant's negligence and DTPA causes of action and because appellant presented no evidence of causation, we conclude

–11–

the trial court did not err by granting appellees' motions for summary judgment. We overrule appellant's first issue.

In her second issue, appellant contends she pleaded a DTPA cause of action. Because we have concluded the trial court did not err by granting appellees' motions for summary judgment on the DTPA cause of action on the element of causation, we need not address this issue.

## CONCLUSION

We affirm the trial court's judgment.

/Lana Myers/
LANA MYERS
121316F.P05                                           JUSTICE



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

TAMMI HAWTHORNE AS NEXT
FRIEND OF E.K., Appellant

No. 05-12-01316-CV        V.

HUFFINES COMMUNITIES, INC.,
PREMIER COMMUNITIES
MANAGEMENT COMPANY, INC.,
PREMIER COMMUNITIES
MANAGEMENT COMPANY, INC. D/B/A
PROVIDENCE HOMEOWNERS
ASSOCIATION AND BEARFOOT
MANAGEMENT, LLC, Appellees

On Appeal from the 366th Judicial District
Court, Collin County, Texas
Trial Court Cause No. 366-01936-2011.
Opinion delivered by Justice Myers.
Justices O'Neill and Brown participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is
**AFFIRMED**.

It is **ORDERED** that appellees HUFFINES COMMUNITIES, INC., PREMIER
COMMUNITIES MANAGEMENT COMPANY, INC., PREMIER COMMUNITIES
MANAGEMENT COMPANY, INC. D/B/A PROVIDENCE HOMEOWNERS ASSOCIATION
AND BEARFOOT MANAGEMENT, LLC recover their costs of this appeal from appellant
TAMMI HAWTHORNE AS NEXT FRIEND OF E.K.

Judgment entered this 24th day of April, 2014.

/Lana Myers/
LANA MYERS
JUSTICE